UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIA J. TRAINOR,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 14-cv-05122 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 14, 24, 25, 27, 28).

After considering and reviewing the record, the Court concludes that this matter should be reversed and remanded with a direction to award benefits. Defendant admits

that the ALJ erred when evaluating step one, when evaluating the medical evidence, when evaluating plaintiff's statements as well as when evaluating the lay evidence (*see* ECF No. 24, p. 3). However, defendant contends that the ALJ should have another opportunity to evaluate again such evidence. Because there is no utility of such proceedings and because it is clear that if the improperly discredited evidence were credited-as-true that the ALJ would be required to conclude that plaintiff is disabled, this matter is remanded for the sole purpose of awarding benefits.

Therefore, this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the limited purpose of awarding benefits as of plaintiff's alleged onset date of September 15, 2009, through the date of the ALJ's decision, September 24, 2012.

## BACKGROUND

Plaintiff, MARIA TRAINOR, was born in 1965 and was 45 years old on the alleged date of disability onset of November 15, 2010 (*see* Tr. 219-20, 221-27). Plaintiff graduated from high school (Tr. 41). Plaintiff has work experience as a cashier, baker, cook, fuel dock attendant, groundskeeper, factory machine operator, and factory set up specialist/operator (Tr. 284). Plaintiff last worked as a cage cashier in a casino, but was terminated for not being able to do the job (Tr. 43-45).

According to the ALJ, plaintiff has at least the severe impairments of "ankle instability, patellar tendinitis, status post cauda equine syndrome and laminectomy, obesity, and adjustment disorder with depressed mood (20 CFR 404.1520(c) and 416.920(c))" (Tr. 17).

At the time of the hearing, plaintiff was living with a roommate (Tr. 41).

# PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* Tr. 78-88, 89-99, 102-115, 116-129). Plaintiff's requested hearing was held before Administrative Law Judge David Johnson ("the ALJ") on September 6, 2012 (*see* Tr. 35-75). On September 24, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.11-34).

Although this fact is not relied on in this decision, the Court notes that on a subsequently filed application, defendant determined that plaintiff has been disabled since September 25, 2012 -- the day after the ALJ's written decision -- that forms the basis of the appeal herein. Therefore, the period of review relevant for this Order is plaintiff's alleged onset date of disability, September 15, 2009, through September 24, 2012, the date of the ALJ's decision discussed herein.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ provided legitimate reasons for rejecting the medical opinion evidence from the treating neurosurgeon Dr. Iuliano; (2) Whether or not the ALJ was required to make a finding as to if plaintiff's spine impairment medically equals the severity of Listing 1.04; (3) Whether or not the ALJ provided legitimate reasons for excluding the need to nap, testified to by plaintiff and Ms. Routson; and (4) Whether or not the ALJ adequately explained the discrepancy between his limitation to "simple routine tasks" work and the

VE's testimony that she could perform a job with a GED Reasoning level 3, as required by SSR 00-4p (*see* ECF No. 14, pp. 2-3). Because the Court concludes that discussion of issues one and three more than adequately demonstrates that plaintiff should be found disabled as of her alleged onset date, these issues exclusively will be discussed herein.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

The "parties agree this case should be reversed and remanded, but disagree on whether this Court should remand the case for further administrative proceedings or for a finding of disability and payment of benefits" (Defendant's Brief, ECF No. 24, p. 1). For the reasons discussed herein, the Court concludes that the later is the appropriate remedy for this matter.

**1. The ALJ erred in his evaluation of the medical opinion of treating neurosurgeon, Dr. Brian Iuliano, M.D.**

Plaintiff contends that the ALJ erred by failing to credit fully the medical opinion evidence from Dr. Iuliano (*see* ECF No. 14, pp. 3-6). Defendant admits that the ALJ erred when evaluating the medical opinion evidence provided by plaintiff's treating neurosurgeon, Dr. Iuliano (*see* ECF No. 24, p. 3).

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). When a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

As noted by the ALJ, plaintiff "testified that she had been working in 2009 and suddenly could not walk. She explained that she had emergency surgery on September 16, 2009" (Tr. 21 (internal citation to testimony and exhibit 4F/19)).

On March, 22, 2011, Dr. Iuliano noted that plaintiff has had two previous lumbar surgeries, with her first one occurring on September 16, 2009 (*see* Tr. 550). As noted by Dr. Iuliano:

> [Plaintiff] had decompressive lumbar laminectomies with bilateral foraminotomies at L3-4 and L4-5 and a left L4-5 diskectomy. This was for an L4-5 disc herniation with cauda equina syndrome and an L3-4 disc protrusion with lateral recess stenosis. She underwent a second surgery on December 3, 2010. At that time, she underwent a bilateral L5-S1 laminectomies, foraminotomies, and diskectomies. The patient still has persistent peroneal numbness as well as bilateral lower extremity numbness and tingling. This is in spite of the decompression spinal surgeries. She is in a pain clinic now. She was on gabapentin, which did not help her at all, but it was stopped by her primary care doctor. She is applying for disability through DSHS at this time. She has been through

      an extensive physical therapy program but has still noted the persistent symptoms.

(Tr. 550).

Regarding his plan for plaintiff, Dr. Iuliano opined that it "is doubtful that she would be able to return to any significant gainful employment because of her residual from the cauda equina syndrome" (*see id.*). In the certification for DSHS on March 22, 2011, Dr. Iuliano limited plaintiff to sitting 1-2 hours in an eight hour day, standing 1-2 hours, and lifting 20 pounds occasionally and 5 pounds frequently (*see* Tr. 612). Dr. Iuliano opined that plaintiff's impairment is expected to impair her work function for her "lifetime" (*see id.*).

The ALJ failed to credit fully the opinion evidence in Dr. Iuliano as follows:

> [O]n March 22, 2011, Dr. Iuliano agreed with the assessment of Stephen Fisher, PA–C, that the claimant would be unable to return to significant gainful employment because of the residual from cauda equina syndrome (internal citation to Exhibit 11 F/7). Little weight is given to this opinion. While the claimant has limitations for many occupations, Dr. Iuliano's opinion is overly broad rather than based on her functional limitations and abilities. In making his opinion that the claimant would be unable to return to significant gainful employment, he does not possess vocational expertise, did not consult a vocational expert, nor adequately consider jobs which the claimant might be able to perform despite her reduced functioning. Furthermore Dr. Iuliano's opinion was given only four months after the claimant second surgery, and he did not have the opportunity to consider many of the later medical records. In addition, Dr. Iuliano did not adequately consider the claimant's many physical activities, such as gardening, mowing the lawn, or making handcrafted items, as discussed above. Finally, Dr. Iuliano's opinion is not supported by the opinion of Dr. Hoskins who had the opportunity to review more records than did Dr. Iuliano, and has greater knowledge of the disability program and the meanings of terms related to disability.

(Tr. 26).

First, the ALJ finds that Dr. Iuliano's opinion is "overly broad rather than based on her functional limitations and abilities" (*see id.*). However, in so finding, the ALJ completely disregards Dr. Iuliano's opinions regarding plaintiff's very specific functional limitations, including that she could sit for 1-2 hours in an eight hour day, stand for 1-2 hours, and lift 20 pounds occasionally and 5 pounds frequently, among other very specific hand-written limitations that the ALJ completely ignored (*see* Tr. 612). The ALJ's finding regarding Dr. Iuliano's opinion being "overly broad" as opposed to being based on her specific functional limitations and abilities is clear error and has no support in the record. The Court concludes that this finding by the ALJ is not based on substantial evidence in the record.

The ALJ's note that Dr. Iuliano's opinion was given only four months after plaintiff's second surgery, on March 22, 2011, does not entail legitimate rationale for failure to credit fully his opinion. This especially is the case as he opined that her condition was "stable" and that she would suffer the very specific opined limitations for the duration of her "lifetime" (*see* Tr. 612). Furthermore, the opinion by Dr. Hoskins, which the ALJ preferred over that of Dr. Iuliano, was provided on April 30, 2011, just over a month after the opinion from Dr. Iuliano, hardly providing support for the ALJ's rationale (*see* Tr. 112). Obviously, Dr. Hoskins did not have much opportunity to consider many "later medical records" either (*see* Tr. 26).

The ALJ also found that Dr. Iuliano's opinion was not credited fully because of the ALJ's finding that he "did not adequately consider the claimant's many physical activities, such as gardening, mowing the lawn, or making hand craft items" (*see* Tr. 26).

As plaintiff never indicated that she mowed the lawn, but instead indicated that she needed help in this area, the ALJ's rationale merely demonstrates that the ALJ failed to adequately consider plaintiff's allegations about her physical activities (*see* Tr. 301). Plaintiff indicated that she does "need help in yard to mow" (*see id.*). She furthermore indicated that she does "very little" gardening (*see id.*), and was attempting to garden while sitting down to accommodate her limitations (*see* Tr. 640), but injured both of her arms in her attempt to do so (*see* Tr. 687). As argued by plaintiff, "Dr. Iuliano did agree that [plaintiff] could sit for 1-2 hours in an 8-hour day and stand for 1-2 hours. There is no evidence that her limited daily activities exceeded this. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity" (*see* ECF No. 14, p. 5 (*citing Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1987))). Plaintiff's argument is persuasive. The ALJ's reference to plaintiff's gardening, mowing the lawn and making hand-crafted items; and his finding that such activities were not adequately considered by Dr. Iuliano does not support the ALJ's failure to credit fully the March 22, 2011 opinion from Dr. Iuliano.

Regarding the ALJ's last reason provided, that Dr. Iuliano's opinion is not supported by the opinion of non-examining state agency medical consultant Dr. Hoskins, the ALJ's rationale directly contradicts the administration's own Social Security rulings as well as Ninth Circuit precedent.

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. *Lester, supra*, 81 F.3d at 830 (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). According to the Ninth Circuit,

"[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinion of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (*citing Rodriguez v. Bowen*, 876 F.2d 759, 761-762 (9th Cir. 1989); *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

Although Dr. Hoskins may have expertise with respect to the meaning of the terms related to disability, Dr. Hoskins not only did not treat plaintiff, but also, he did not even have the opportunity to examine plaintiff. The ALJ's finding, which is in direct contradiction to Ninth Circuit precedent, is unpersuasive and does not support the ALJ's failure to credit fully the medical opinion of plaintiff's treating neurosurgeon.

Similarly, the ALJ's reliance on Dr. Iuliano's lack of vocational expertise also is misplaced. His opinion regarding her being disabled nevertheless is relevant and should not have been dismissed by the ALJ. Rarely do treating doctors have vocational expertise, nevertheless, according to Ninth Circuit precedent as well as Social Security rulings, the opinions of a claimant's treating physician "as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Massanari*, *supra*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (*citing* SSR 96-2p, 1996 SSR LEXIS 9). Here, Dr. Iuliano's expertise is in clinical neurosurgery, a highly relevant specialty for the opinions provided, in contrast to the general medical expertise of Dr. Hoskins (*see* Tr. 110). Dr. Iuliano's opinion following plaintiff's second surgery should have been given controlling weight by the ALJ. *See*

*Massanari*, *supra*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (*citing* SSR 96-2p, 1996 SSR LEXIS 9).

Based on a review of the record as a whole, the Court concludes that the medical opinion of Dr. Iuliano following plaintiff's second surgery[1] is well supported and is not inconsistent with other substantial evidence in the record. *See id.* Therefore, it should be given controlling weight. *See id.*

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

---

[1] Dr. Iuliano's earlier opinion that plaintiff could return to light work is inconsistent with his subsequent recommendation for an additional back surgery; is inconsistent with plaintiff's testimony; and is inconsistent with the fact that she was fired after her unsuccessful work attempt for the sole reason that she could not do her job (*see* ECF No. 14, p. 10 n.4).

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (*citing Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1202 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007); *Orn v. Astrue,* 495 F.3d 625, 640 (9th Cir. 2007)*; Benecke, supra,* 379 F.3d at 595; *Smolen*, *supra*, 80 F.3d at 1292)).

The court recently found that "the district court abused its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the claimant] is not, in fact, disabled." *Garrison v. Colvin*, 759 F.3d at 1021 (footnote omitted).

All of the factors of the credit-as-true test are met here. *See id*. at 1020. Regarding the second factor, as the Court has just discussed, *see supra*, the ALJ "has failed to provide legally sufficient reasons for rejecting" the opinion of treating neurosurgeon, Dr. Iuliano. *See id.*

Additionally, regarding the first factor, "the record has been fully developed and further administrative proceedings would serve no useful purpose." *See id.* The time period following the ALJ's written decision already has been decided, based on a subsequent application; so, the sole issue presented herein is regarding the time period already addressed by the ALJ in his written decision. In this regard, the Court also grants defendant's motion to file a surreply (ECF No. 27) and agrees with defendant that the subsequent favorable decision from the Appeals Counsel is not before the Court (*id* at 2).

Furthermore, regarding the alleged "useful purpose" for remand, defendant argues that "given the number of errors in the ALJ's decision, the proper remedy is a remand for further administrative proceedings to allow the ALJ to properly address them" (*see* ECF

No. 24, p. 8). Defendant admits that the ALJ erred at step one; erred in evaluating the medical evidence; erred in evaluating plaintiff's testimony; erred in evaluating the lay testimony; and provided a final, step four, determinative finding that "is not supported" (*see id.*, p. 3). Although the Court is not explicitly discussing all of these findings in this Order herein, the Court agrees with defendant's admissions that the ALJ erred at all of these steps in his written decision. The Court notes the quotation by plaintiff of relevant Ninth Circuit precedent in which the court found that "the district court abused its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the claimant] is not, in fact, disabled" as follows:

> [As discussed by the Ninth Circuit:] Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis. *See Benecke*, 379 F.3d at 595 ('Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tales let's play again' system of disability benefits adjudication.'); *Moisa [v. Barnhart]*, 367 F.3d [882,] 887 [9th Cir. 2004] ('The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible anymore then Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.' (omitting a citation)).

(ECF No. 25, p. 3 (*quoting Garrison v. Colvin*, 759 F.3d 995, 1021-22 (9th Cir. 2014))).

As indicated, the Court will follow this very recent precedent. *See Garrison, supra*, 759 F.3d at 1021-22. The Court finds no persuasive reason to allow the ALJ to revisit all of these findings.

Finally, the third requirement is met, as the ALJ would be required to find plaintiff disabled were the opinion evidence from Dr. Iuliano following his second neurosurgery credited-as-true. At plaintiff's administrative hearing, the Vocational Expert testified that if a hypothetical individual "could stand one to two hours out of eight, sit one to two hours out of eight, and could spend the rest of the day walking," that there would be no jobs that such an individual could do in the economy (Tr. 68; *see also* Tr. 67-68). These are the exact limitations of plaintiff, among others, opined by Dr. Iuliano (*see* Tr. 612). Therefore, the Court concludes that if Dr. Iuliano's March 22, 2011 medical opinion regarding plaintiff's very specific functional limitations is credited-as-true, the ALJ would be required to find plaintiff disabled following remand. *See Garrison*, *supra*, 759 F.3d at 1020 (citations omitted).

> 2. **The ALJ erred in his evaluation of plaintiff's allegations and erred by failing to include the need to nap, testified to by plaintiff, as well as demonstrated by the lay evidence provided by Ms. Brenda Ann Routson**.

Plaintiff contends that the ALJ erroneously failed to include in the RFC determination plaintiff's need to nap (*see* ECF No. 14, pp. 7-13). Defendant admits that the ALJ erred when determining plaintiff's credibility and erred in his evaluation of the lay evidence (*see* ECF No. 24. p. 3).

As summarized by the ALJ:

> [Plaintiff] testified that she had been working in 2009 and suddenly could not walk. She explained that she had emergency surgery on September 16, 2009 (internal citation to testimony and exhibit 4F/19). Two weeks later the casino where she had worked closed. The claimant

> testified that after her first surgery the casino reopened and she began working again in July 2010. She explained that she could not do the work and was fired in the end of October 2010. She described having difficulty lifting the money at the casino but her biggest issue is pain from standing or trying to accurately count money. The claimant elaborated that pain made it difficult for her to be right on with having an exact amount of money and the money drawer. The claimant testified that she had been a very good employee. She related that her doctor would not release her to work at the casino and she stopped working. She also worked for a family friend for less than 30 minutes a day. She described the work for a family friend as helping to put a breathing machine mask on or helping with grocery shopping.
>
> The claimant testified that when she was fired in October 2010 she did not believe she could do the job because of the sitting and standing requirements. She alleged that she had numbness down from the incision in her back and when she would sit it felt like sitting on rocks. The claimant related that when she would sit her feet would swell, which made the pain worse. She described having pain in her tailbone when she sits for too long. She explained that she can only sit for 30 to 60 minutes and could only stand for about 15 minutes before she would need to move, change shoes, or rest. She alleged falling once a month because she could not feel her legs. She explained that she would rest for 2 to 3 hours periodically during an eight hour period. She reported that she could alternate between sitting and standing for 2 to 3 hours because she would be unable to deal with the pain for any longer, even with medications. The claimant testified that she could do chores for 20 to 30 minutes before she would have to stop and rest for five or 10 minutes.
>
> The claimant testified that she had good days and bad days. She described days where she was depressed as not wanting to move or [do] anything. She described having two days a week where she was depressed to that degree. She reported that it was usually brought on by waking up in pain. She testified that on a good day she could do light chores and visit with her parents. The claimant explained that she had tried gardening sitting down, but had hurt both of her arms doing so. She reported that she would nap daily for one to three hours. Claimant further testified that her pain medications interfere with her ability to concentrate on more than one thing at a time.

(Tr. 21).

ORDER ON PLAINTIFF'S COMPLAINT - 14

The ALJ relies heavily in his written decision on plaintiff's brief and partial recovery between her two surgeries (*see* Tr. 22). After plaintiff's first surgery in September, 2009, Dr. Iuliano opined on November 12, 2009 that plaintiff could return to light duty work; however approximately a month later, plaintiff fell, injuring her left knee and right ankle (*see id.*). An MRI performed on February 14, 2010 was interpreted by Dr. Iuliano as showing new disc protrusions, causing compression of the S1 nerve roots and impingement of the nerve roots, which he opined could be contributing to plaintiff's symptoms of residual urinary incontinence (*see id.*).

The ALJ also in his written decision relies heavily on plaintiff's unsuccessful work attempt (*see* Tr. 22). Although plaintiff returned to work in July, 2010, on August 10, 2010, she returned to Providence neurosurgery, reporting various symptoms to the medical personnel, including numbness, as well as tingling in her legs and feet after working for several hours (*see id.*). Physical examination revealed decreased sensation and muscle weakness in her right lower extremity (*see id.* (*citing* Exhibit 3F/4, 8). Plaintiff decided to delay the recommended surgery, and instead attempted to seek full-time work (*see* Tr. 22). On November 15, 2010, plaintiff "reported that despite her treatment regimen, her pain and sensory loss increased with prolonged standing or walking" (*see id.* (*citing* Exhibit 4F/4). As previously noted, on December 3, 2010, plaintiff underwent a bilateral L5-S1 laminectomy, foraminotomies, and diskectomy (*see* Tr. 22-23 (*citing* Exhibit 5F/9-10)). Plaintiff testified that she was fired for the sole reason that she could not do the job (*see* Tr. 43-44).

Defendant admits that the ALJ erred when evaluating plaintiff's allegations and testimony (*see* ECF No. 24, p. 3). The Court agrees with defendant's concession and concludes based on the record as a whole, as discussed briefly below, that the ALJ "failed to provide legally sufficient reasons for rejecting such evidence." *See Garrison*, *supra*, 759 F.3d at 1020 (citations omitted).

For example, although the ALJ relied on plaintiff's gardening and other activities, such ability does not contradict any of her other testimony and there is no evidence that plaintiff's activities were transferable to a work setting, as nothing in the record demonstrates that plaintiff was able to engage long-term in any of the cited activities for more than an hour or so. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities. . . . does not in any way detract from her credibility as to her overall disability") (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the Ninth Circuit has specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills"))).

As noted, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (*citing Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1202 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007)*; Orn v. Astrue,* 495 F.3d 625, 640 (9th Cir. 2007)*; Benecke, supra,* 379 F.3d at 595; *Smolen*, *supra*, 80 F.3d at 1292)).

Here, as noted, defendant admits, and the Court has concluded based on the record, that the second part of the test is met with respect to the ALJ's evaluation of plaintiff's allegations and testimony. *See id.* "The ALJ has failed to provide legally sufficient reasons for rejecting plaintiff's allegations and testimony." *See id.* In addition, regarding the first part of the test, as the Court already has concluded and discussed, *see supra*, section 1, "the record has been fully developed and further administrative proceedings would serve no useful purpose." *See id.* Finally, regarding the final part of the credit-as-true test, the Court notes plaintiff's testimony as cited by the ALJ that plaintiff "would nap daily for one to three hours" due to fatigue from her pain, and side-effects from her medication (*see* Tr. 21). Both plaintiff and her friend/roommate, Ms. Routson, testified to this fact that plaintiff naps daily in the middle of the day (*see* Tr. 53-54, 59). The Court notes here that defendant also admitted that the ALJ "failed to provide legally sufficient reasons for rejecting" the lay evidence from Ms. Routson (ECF No. 24, p. 3). *See Garrison*, *supra*, 759 F.3d at 1020 (citations omitted).

According to the testimony of the vocational expert ("VE"), the final element of the test for determining if it is appropriate that this "evidence should be credited and an immediate award of benefits directed" also is met. *Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292); *see also Garrison*, *supra*, 759 F.3d at 1020 (citations omitted). At plaintiff's administrative hearing, the VE testified that if "an individual could perform the jobs [] identified [as jobs that one with plaintiff's RFC could perform,] but would need to take a nap during the workday that would last from one to three hours," that such an individual would not be capable of normal, competitive work. (Tr. 68). Therefore, as discussed, and based on the record as a whole, the Court concludes that it is clear from the record that "if the improperly discredited evidence [from plaintiff] were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, *supra*, 759 F.3d at 1020 (citations omitted). This conclusion is backed up by the lay evidence, which also was rejected improperly by the ALJ.

Therefore, all of the relevant factors for this Ninth Circuit test are met for plaintiff's testimony and the lay testimony, in addition to being met for the medical evidence, as discussed previously, *see supra*, section 1. Therefore, the Court finds that two separate grounds exist for the holding herein that this matter should be reversed with a direction to award benefits.

**3.  This matter should be remanded with a direction to award benefits.**

This issue has been discussed already, *see supra*, sections 1 and 2. The Court concludes that benefits should be awarded as of the date of plaintiff's alleged disability

onset, September 15, 2009, which was the date of her first back surgery. Her brief periods of partial recovery and her unsuccessful work attempt do not demonstrate that she was not disabled from this time, September 15, 2009, until the date of the ALJ's decision, September 24, 2012, and, the ALJ on remand is directed to find plaintiff disabled during this period of time. *See Garrison*, *supra*, 759 F.3d at 1020 (citations omitted). The Court would be abusing its discretion to conclude otherwise. *See id.* at 1021.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) with a direction to award benefits as of plaintiff's first back surgery and alleged date of disability onset, September 15, 2009 through September 24, 2012, the date of the ALJ's written decision.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 20th day of October, 2014.

J. Richard Creatura
United States Magistrate Judge

ORDER ON PLAINTIFF'S COMPLAINT - 19